**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------
IGOR DESYATNIK,                            :
                                           :
                    Plaintiff,             :          Civ. No. 03-5441 (DRD)
               v.                          :
                                           :
ATLANTIC CASTING &                         :
ENGINEERING CORP.,                         :              **O P I N I O N**
                                           :
                    Defendant.             :
-----------------------------------------

Saul D. Zabell, Esq.
ZABELL & ASSOCIATES, PC
700 Lakeland Avenue
Bohemia, NY 11716

*Attorney for Plaintiff*


Virginia T. Shea, Esq.
CARLET, GARRISON KLEIN & ZARETSKY
1135 Clifton Avenue
PO box 2666
Clifton, NJ 07105-2666

*Attorney for Defendant*


**DEBEVOISE, Senior District Judge**

# I.  PROCEDURAL HISTORY

Plaintiff, Igor Desyatik, was terminated by his employer, Defendant, Atlantic Casting &

Engineering Corp., on July 9, 2002.  Thereafter, Plaintiff filed this eight count complaint

containing the following allegations: (1) disability discrimination in violation of the Americans

with Disabilities Act of 1990 ("ADA"); (2) disability discrimination in violation of  the New Jersey Law Against Discrimination ("NJLAD"); (3) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (4) national origin discrimination in violation of the NJLAD; (5) religious discrimination in violation of Title VII; (6) religious discrimination in violation of the NJLAD; (7) retaliation in violation of Title VII; (8) retaliation in violation of the NJLAD.  Defendant now moves for summary judgment on all counts.

## II.  FACTUAL BACKGROUND

Plaintiff, a Jewish man of Russian descent, was hired by Defendant on April 3, 2000, to work as a toolmaker.  Plaintiff was supervised by Dan Lenino, Defendant's Quality Assurance Manager, until September of 2001.  Thereafter, Jake Kastermans, who was president of the Defendant company at the time, placed Plaintiff under the supervision of Oscar Ronquillo, Defendant's Machine Shop Manager, but his job title and responsibilities remained the same.

Plaintiff claims he was subjected to discriminatory treatment throughout his employment but the specific allegations listed in his complaint begin in October of 2001, shortly after he was placed under Mr. Ronquillo's supervision.  According to Plaintiff the discriminatory events allegedly occurred in the following manner.  In October of 2001, Mr. Ronquillo asked Plaintiff, "[a]re you Jewish?  Jake [Kastermans] told me."  In November of 2001, Mr. Kastermans told Plaintiff, "Don't show your Jewish identity in your work."  In that same month Plaintiff was accused of losing a tool and denied any involvement.  Thereafter, Mr. Kastermans told Defendant's co-owner, "I don't believe this Jewish bastard."  In December of 2001, Mr. Ronquillo referred to Plaintiff in a discussion with another employee by saying "[h]e's Jewish, and they are no good."  On several occassions, Plaintiff complained to Mr. Kastermans about the

way Mr. Ronquillo treated him but was told, "[i]f you don't like this, take a hike . . . I know who you are, and I know where you come from."  At the beginning of 2002, Plaintiff was given fewer opportunities to work overtime.  Sometime thereafter, Plaintiff was informed by Peter Morse, Defendant's Controller, that upper management was going to use every means possible to force Plaintiff to quit.  In April of 2002, Plaintiff overheard Mr. Kastermans tell Mr. Lenino to "[g]et rid of this Russian shoemaker," referring to another employee who was terminated shortly thereafter.  On July 10, 2002, Plaintiff reported to work to find another employee occupying his workstation.  He was told that his own project had been outsourced and that he should sweep the floor.  At that point, Defendant claims, and Plaintiff denies, that an altercation ensued.  Plaintiff was then terminated.

Plaintiff has a history of depression.  In 1998 he was treated by a psychiatrist, Dr. Santapuri Rao, for mild depression.  Plaintiff saw Dr. Rao eleven times in 1998 and 1999, prior to his employment at Atlantic.  During his employment with Atlantic, Plaintiff only saw Dr. Rao on one occasion, August 11, 2001.  Plaintiff concedes that at the time he started work at Atlantic, he was not suffering from any symptoms of depression, nor was he taking medication for his condition.  Accordingly, at his pre-employment physical, he refrained from checking off boxes on the intake form that indicated a "psychiatric history," that he used "medication regularly," or that he had symptoms of "feeling down."  In his deposition testimony, Plaintiff states that he may have informed one of Defendant's managers that he suffered from mild depression but he never told them that it constituted a disability nor did he ever request special accommodations for any such disability.  (Desyatnik Dep. 105:8-106:10, June 3, 2005.)  Plaintiff did not see Dr. Rao again until September 7, 2002, two months after he was terminated.

Plaintiff also alleges that he suffered back pain due to an injury incurred approximately nine months prior to his termination.  Plaintiff saw a doctor in May and June of 2002 to have that injury treated.  He also saw the same doctor one other time but the date of that visit is not certain. In his affidavit, dated October 27, 2005, Plaintiff alleges that he saw the doctor on July 10, 2002, the date of his termination.  (Desyatnik Aff. 16.)  But at his deposition on June 3, 2005, he testified that his second visit to that doctor was not until August of 2002, three weeks after his termination.  (Desyatnik Dep. 73:13-17.)  Regardless, Plaintiff testified that he did not have any type of disability while he was working for Defendant.  (Desyatnik Dep. 62:3-13.)  He further testified that he does not remember whether he told anyone at work that he was seeing a doctor for his back injury.  (Desyatnik Dep. 72:24-73:2.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"  *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law,  <u>Id</u>.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment,  <u>Id</u>.   In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor,'" <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999), quoting <u>Anderson</u>, 477 U.S. at 255.  But where the

4

nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be

discharged by 'showing' - that is, pointing out to the district court - that there is an absence of

evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325

(U.S. 1986).

### III.  DISCUSSION

Count I - violation of the Americans with Disabilities Act

_____For a plaintiff to demonstrate a cause of action under the ADA, he must show that (1) he

is disabled, (2) he is a qualified individual with a disability, and (3) his employer terminated him

or discriminated against him because of his disability.  Freeman v. Rollins Environ. Services of

New Jersey, No. 94-1871, 1996 WL 451317 at *4 (D.N.J. 1996).  In the present case, Plaintiff

has testified that he did not have any type of disability while he was working for Defendant.

Even if he could prove that he was disabled, he has failed to produce any evidence that he was

discriminated against because of a disability or that Defendant had any knowledge of his

disability.  Tellingly, Plaintiff refrains from discussing this claim in his opposition brief.

Therefore, Defendant's motion for summary judgment as to Count I is granted.

Count II - disability discrimination in violation of the New Jersey Law Against Discrimination

_____Although the standard for demonstrating disability discrimination under this statute

differs somewhat from the standard under the ADA, Plaintiff is still required to prove that he

suffered from a disability and that Defendant discriminated against him because of his disability.

As stated above, Plaintiff cannot prove either requirement.  Furthermore, Plaintiff's opposition

brief fails to discuss this count as well.  Therefore, Defendant's motion for summary judgment as

to Count II is granted.

Counts III and IV - national origin discrimination in violation of Title VII and the NJLAD

Generally, a claim under the NJLAD is analyzed under Title VII standards.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).  As such, the Title VII and NJLAD claims that are based on the same factual allegations will be analyzed concurrently.

As for Counts III and IV Plaintiff claims that Defendant's national origin discrimination created a hostile work environment and ultimately led to his termination.  There are two distinct standards related to this claim, one for establishing a hostile work environment and one for proving that the adverse employment action was based on unlawful discrimination.

1.  Existence of a Hostile Work Environment Predicated on National Origin Discrimination

To establish a prima facie case of a hostile work environment based on national origin, a plaintiff must show that "'(1) the employee[] suffered intentional discrimination because of [national origin]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [national origin] in that position; and (5) the existence of respondeat superior liability.'"  Abramson v. William Paterson College, 260 F.3d 265, 276-277 (3d Cir. 2001).

In this case, Plaintiff testified that Defendant did not discriminate against him because of his national origin.  Furthermore, the only evidence that could be considered national origin discrimination consists of two comments: the first, when Mr. Kastermans said "I know who you are, and I know where you come from," the second, when Plaintiff overheard Mr. Kastermans tell Mr. Lenino to "[g]et rid of this Russian shoemaker," referring to another employee who was terminated shortly thereafter.  Such comments fall far short of creating a hostile work environment.  In addition, Plaintiff once again fails to offer any support for this claim in his

opposition brief.  As such, Plaintiff has failed to establish the existence of a hostile work environment predicated on his national origin.

2.  Wrongful Termination Predicated on National Origin Discrimination

To prove unlawful discrimination resulting in an adverse employment action, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination, Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989).  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant employer to articulate some legitimate, non-discriminatory reason for the adverse employment action, Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 (3d Cir. 1996).  Thereafter, the burden shifts back to the plaintiff "to produce some evidence from which a reasonable factfinder could conclude either that the [employer's] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination," Bray v. Marriott Hotels, 110 F.3d 986, 990(3d Cir. 1997); *see also* Sheridan, 100 F.3d at 1072 (on a motion for summary judgment "[t]he district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible").  A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them 'unworthy of credence,'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

To establish a prima facie case for discrimination a plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with

qualifications similar to the plaintiff's to fill the position.  Sarullo v. United States Postal Serv.,
352 F.3d 789, 797 (3d Cir. 2003).

In the present case, the first three elements are undisputed.  Regarding the fourth element,
Plaintiff testified that Defendant did not discriminate against him because of his national origin.
As such, there is no inference of discriminatory action to support that element.  Therefore,
Plaintiff has failed to establish a prima facie case for national origin discrimination.  Defendant's
motion for summary judgment as to Counts III and IV will be granted.

Counts V and VI - religious discrimination in violation of Title VII and the NJLAD

Plaintiff claims that Defendant's religious discrimination created a hostile work
environment and ultimately led to his termination.  As with Counts III and IV, there are two
distinct standards related to this claim, one for establishing a hostile work environment and one
for proving that the adverse employment action was based on unlawful discrimination.  The
standards for each type of claim were articulated above.

1.  Existence of a Hostile Work Environment Predicated on Religious Discrimination

Regarding the existence of a hostile work environment, Plaintiff's allegations, if true, are
sufficient to satisfy the first element as they show that he suffered intentional discrimination
because of his religious faith.  However, to satisfy the second element, Plaintiff must show that
the discrimination was pervasive and regular.  Conduct is considered pervasive if it alters the
condition of the plaintiff's employment and creates an abusive working environment. Meritor
Sav. Bank v. Vinson, 477 U.S. 57, 67.  To examine this element, a court must look at all of the
circumstances surrounding the alleged discrimination, including the "frequency of the
discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  Furthermore, while no single factor is required, "the effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive."  Id.

In the present case, Plaintiff was subjected to several discriminatory comments over a period of about nine months, beginning in November of 2001 when Mr. Kastermans allegedly told him not to "show [his] Jewish identity in [his] work."  Over the next few months Plaintiff alleges several discriminatory incidents.  He states that he was wrongly accused of losing a tool and that upon denying involvement, Mr. Kastermans said "I don't believe this Jewish bastard."  Plaintiff further states that Mr. Ronquillo referred to him in a discussion with another employee by saying "[h]e's Jewish, and they are no good."  When he allegedly complained to Mr. Kastermans about the way Mr. Ronquillo treated him, Mr. Kastermans allegedly said, "[i]f you don't like this, take a hike . . . I know who you are, and I know where you come from."  In addition to these comments, Plaintiff claims that his supervisor, Mr. Ronquillo generally spoke to him in a rude and condescending manner and mistreated him by denying him overtime and making him sweep the floors, even though such work was generally given to employees with far less work experience.

Although the specific comments listed above are fairly infrequent, they are strong enough to alter the conditions of Plaintiff's employment and to create an abusive working environment. In particular, the statement that Plaintiff should not show his Jewish identity implies that Jews are not welcome in the workplace and that Plaintiff should, in effect, lie about his identity. Furthermore, the statement "I don't believe this Jewish bastard," implies that Plaintiff's religion

led his boss to believe that he could not be trusted. Such a belief could have had a serious impact on Plaintiff's working conditions, including the role and responsibilities with which he was entrusted.

Mr. Kastermans other comment, "[i]f you don't like this, take a hike . . . I know who you are, and I know where you come from," implies that Plaintiff, because of his identity, must tolerate his supervisor's rude and condescending conduct. Along with Plaintiff's other allegations, the above comments demonstrate an abusive environment in which the conditions of Plaintiff's employment could have been seriously affected by the Defendant managers' discriminatory conduct.

Defendant argues that the alleged conduct does not constitute a hostile work environment. It cites Heitzman v. Monmouth County, 321 N.J. Super. 133 (App. Div. 1999), a case in which the court held that eight anti-Semitic comments were not severe and pervasive enough to create a hostile work environment. But in that case, the most offensive comment was made by a co-worker and there is no evidence that management was aware of the comment. The remaining comments were either directed at someone other than the plaintiff or were considered by the court to amount to mere teasing. Therefore, that case is distinguishable from the present case.

Regarding the third element, Plaintiff has presented some, albeit limited, evidence that he suffered from depression and that his condition worsened as a result of the treatment he received at work. Although that evidence is limited, a reasonable factfinder could conclude that the alleged incidents detrimentally affected him.

The fourth and fifth elements of this claim are undisputed. Therefore, Plaintiff has established a prima facie case that Defendant's religious discrimination created a hostile work

environment.

2.  Wrongful Termination Predicated on Religious Discrimination

Regarding Plaintiff's termination it is undisputed that: Plaintiff is Jewish and therefore belongs to a protected class; he was qualified for the position he held and; he was subjected to an adverse employment action when he was terminated.  Thus, to establish a prima facie case, Plaintiff must only show that the circumstances raise an inference of discriminatory action and that Defendant sought to replace Plaintiff with a similarly qualified person.  Given the alleged discriminatory statements discussed above, Plaintiff has raised an inference of discrimination.  In addition, Plaintiff alleges, and Defendant has not disputed, that he was replaced by a less qualified individual.  Thus, Plaintiff has established a prima facie case for wrongful termination and Defendant has the burden of producing a non-discriminatory justification for Plaintiff's termination.

Defendant argues that Plaintiff was fired for insubordination as he refused to sweep the floors and thereafter started an altercation.  Although Defendant's brief fails to raise a non-discriminatory justification, its statement of facts alleges that Plaintiff was fired because he assaulted his supervisor.  But, the discriminatory comments that Plaintiff alleges are sufficient to raise an inference that Defendant's justification is merely a pretext.  See e.g., Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (discriminatory comments raise an inference of pretext if they are made by the decision maker or those in a position to influence the decision maker); Fuentes v. Perskie, 32 F.3d 759, 766 (3d Cir. 1994) ("the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate").  Thus, Plaintiff has satisfied his burden regarding the

11

claim for wrongful termination predicated on religious discrimination.  Defendant's motion for summary judgment of Counts V and VI will be denied in full.

Counts VII and VIII - unlawful retaliation in violation of Title VII and the NJLAD

To establish a prima facie case for retaliation, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action," Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

In the present case, Plaintiff cites to no protected activity that could constitute the basis for any unlawful retaliation.  Thus, Defendant's motion for summary judgment as to Counts VII and VIII will be granted.

**IV.  CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment will be granted as to Counts I, II, III, IV, VII and VIII.  It will be denied as to Counts V and VI.  The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:          November 28, 2005