RECEIVED
JAN 0 2 2008
AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------x
IGOR DESYATNIK,

                **Plaintiff,**
- against -

ATLANTIC CASTING & ENGINEERING
CORP.,

                **Defendant.**
-------------------------------------------------x

Hon. Dickinson R. Debevoise

Civil Action No. 03 CV 5441

FINAL PRETRIAL ORDER

    The matter having come before the Court for a pretrial conference pursuant to Fed.R.Civ.P. 16; **SAUL D. ZABELL** having appeared for plaintiff(s) and **VIRGINIA T. SHEA of Carlet, Garrison, Klein & Zaretsky, L.L.C.**, having appeared for defendant(s); the following Final Pretrial Order is hereby entered:

### 1. JURISDICTION:

    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and 42 U.S.C. § 12117). This Court has jurisdiction over all state law claims brought in this action ( New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*) pursuant to 28 U.S.C. § 1367.

    2.    This action properly lies in the United States District Court, District of New Jersey, pursuant to 28 U.S.C. § 1391 because the alleged unlawful employment practices complained of herein occurred in the State of New Jersey, County of Passaic.

    3.    This court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

### 2. PENDING/CONTEMPLATED MOTIONS:

1

## 2. PENDING/CONTEMPLATED MOTIONS:

Defendant seeks to file an *in limine* motion for partial summary judgment on the basis that Plaintiff failed to complete a condition precedent to filing a claim under Title VII as he failed to comply with a statutory prerequisite under 29 U.S.C. 2000e that he file a charge of workplace harassment with the Equal Employment Opportunity Commission within 300 days of an alleged violation. Defendant also seeks to file an *in limine* motion to bar the testimony of Dr. Santapuri Rao as fact witnesses.

Plaintiff objects to Defendant's anticipated partial motion for summary judgment inasmuch as Plaintiff has satisfied all conditions precedent necessary for filing a claim of discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 USC §2000(e), *et seq.*

## 3. STIPULATION OF FACTS:

1. Plaintiff claims to be a member of the Jewish faith.

2. On or about April 3, 2000, Plaintiff began working as a Toolmaker at Defendant's facilities located at 810 Bloomfield Avenue, Clifton, New Jersey 07012.

3. Plaintiff's employment with Defendant was terminated on or about July 10, 2002.

4. During the term of his employment with Defendant, Plaintiff was directly supervised by Oscar Ronquillo.

5. Plaintiff was terminated by Mr. Ronquillo.

## 4. PLAINTIFF'S CONTESTED FACTS:

A. Plaintiff intends to prove the following contested facts with regard to liability:

1. At all times relevant to this proceeding, Plaintiff performed the essential functions of his job in a satisfactory manner.

2

2. Throughout the term of Plaintiff's employment with defendant, Plaintiff was subjected to unlawful comments and innuendo predicated upon his religion.

3. Plaintiff was subject to unlawful comments at the hands of his immediate supervisor, Oscar Ronquillo and Defendant's co-owner, Jake Kastermans.

4. Plaintiff lodged complaints to Defendant regarding the unlawful comments and innuendo to which he was subjected while employed by Defendant.

5. Despite Plaintiff's complaints, no corrective action was taken by Defendant.

6. Prior to Plaintiff's termination on or about July 10, 2002, Plaintiff was advised that his job had been outsourced, yet his job duties were actually reassigned to a non-similarly situated employee of Defendant.

B. Plaintiff intends to prove the following contested facts with regard to damages:

1. Plaintiff has incurred back pay damages as a result of his termination.

2. Plaintiff has suffered emotional damages as a result of his termination.

3. Plaintiff has incurred actual and compensatory damages as a result of his termination.

4. Plaintiff has incurred attorney's fees in connection with this lawsuit.

## 5. DEFENDANT'S CONTESTED FACTS:

A. Defendant intends to prove the following contested facts with regard to liability:

1. On July 10, 2002, Mr. Ronquillo informed Mr. Desyatnik that there was no work available for overtime that day and that he should go home.

2. Mr. Desyatnik threw his tools to the floor and stormed out of the building.

3. Shortly thereafter, Mr. Desyatnik returned and met with Mr. Ronquillo.

4. During the course of their conversation, Mr. Desyatnik approached Mr. Ronquillo, raised his fist and began yelling profanities and personal remarks, and when Mr. Ronquillo

3

turned, Mr. Desyatnik kicked Mr. Ronquillo in the back of his thigh, resulting in Mr. Ronquillo's decision to terminate him for insubordination.

5. On July 10, 2005, Mr. Ronquillo fired Mr. Desyatnik for insubordination.

6. Mr. Desyatnik was aware that such conduct could result in termination since he had received a copy of Atlantic's Rules and Regulations which advised that immediate discharge could result from, among other infractions, disorderly conduct on company property, willful insubordination, the direct refusal to follow an unequivocal directive or instruction by a supervisor or abusive or threatening language directed to any company employee.

7. In connection with proceedings for unemployment benefits, initiated by Mr. Desyatnik, he admitted to throwing tools on his shop table and raising his voice in anger at his supervisor.

8. Mr. Desyatnik never told anyone at Atlantic that he was Jewish, and no one at Atlantic knew that Mr. Desyatnik was Jewish. Mr. Desyatnik never took off time for the Jewish holidays nor proffered any indicia of following the Jewish faith.

9. Jake Kastermans never said words to the effect of "United States is a beautiful country, the only thing Jews and Blacks kill this country."

10. Mr. Kastermans never said to Mr. Desyatnik words to the effect of "don't show me your Jewish identity."

11. Mr. Kastermans never said to Mr. Desyatnik words to the effect of "I know who you are, I know where you come from."

12. Mr. Kastermans never said to another employee, in reference to Mr. Desyatnik, words to the effect of "I don't believe this Jewish bastard."

13.  Oscar Ronquillo never said, in reference to Mr. Desyatnik, words to the effect of, "he's Jewish, they're no good."

14.  Mr. Desyatnik never told anyone at Atlantic that he was offended by any purported "Jewish" comments.

15.  Mr. Desyatnik did not like working for Oscar Ronquillo.

16.  Neither Mr. Kastermans, nor Mr. Ronquillo, made any anti-Semitic or comments that could be construed to be derogatory by reasonable persons of Jewish ancestry in the workplace.

17.  Mr. Desyatnik was not subjected to a hostile work environment or conduct or comments that occurred because he was Jewish, that a reasonable person of Jewish ancestry would consider sufficiently severe or pervasive so as to alter the condition of employment and create an intimidating, hostile or offensive work environment.

18.  Mr. Desyatnik was not terminated from Atlantic because he was Jewish.

19.  Atlantic did not act with a wanton or willful disregard of Mr. Desyatnik's right; its actions were not wantonly reckless or malicious, and its actions were not intentional, deliberate or of the character of outrage associated with a crime.

20.  All alleged anti-Semitic comments made by Mr. Kastermans and/or Mr. Ronquillo occurred prior to January 2002.

21.  Mr. Desyatnik did not file an Equal Employment Opportunity Commission ("EEOC") charge of Discrimination until on or about November 11, 2002.

22.  Mr. Desyatnik does not claim a continuing violation of Title VII.

23.  Atlantic did not treat persons outside of the Jewish faith more favorably than those of the Jewish faith.

B.    Defendant intends to prove the following contested facts with regard to damages:

1.    Mr. Desyatnik treated with Dr. Santapuri Rao, a psychiatrist, from January 3, 1998 through August 27, 1999 for mild depression, and then did not treat with Dr. Rao until August 11, 2000, when he saw him once more.

2.    In 1998, before he was employed at Atlantic, Mr. Desyatnik had told Dr. Rao that he was easily irritated, made mistakes at work and argued with the boss, among other complaints.

3.    At a pre-employment physical pm April 3, 2000, Mr. Desyatnik completed a medical intake form and failed to check off boxes indicating that he had a "psychiatric history," used "medication regularly," or had symptoms of "feeling down."

4.    Following his July 10, 2002 termination, Mr. Desyatnik did not treat with Dr. Rao until September 7, 2002, almost two months after his termination from Atlantic.

5.    Mr. Desyatnik told Dr. Rao that he had lost his job because of pressure at work.

6.    Mr. Desyatnik only treated with Dr. Rao on two occasions following his termination.

7.    Mr. Desyatnik did not treat with anyone else as a result of his termination.

## 6. PLAINTIFF'S WITNESSES:

A.    On liability Plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

| Name/Title | Present or Last Known Employer or Address |
|---|---|
| 1. Plaintiff | c/o Plaintiff's Counsel |
| 2. Dan Lenino | Employee of Defendant (has knowledge of plaintiff's employment history and job performance) |

6

| | | |
|---|---|---|
| 3. | Jake Kastermans | Defendant's Co-owner (has knowledge of Plaintiff's employment history, job responsibilities and performance) |
| 4. | Oscar Ronquillo | Employee of Defendant (as Plaintiff's former supervisor, has knowledge of Plaintiff's work history and job responsibilities) |
| 5. | Jim Binns | Defendant's Co-owner (has knowledge of Plaintiff's employment history, job responsibilities) |
| 6. | Alfred Dijkowski | Employee of Defendant (has knowledge of Plaintiff's employment history) |
| 7. | Peter Morse | Employee of Defendant (has knowledge of the terms and conditions of Plaintiff's employment with Defendant) |
| 8. | Melvin Hernandez | Employee of Defendant (has knowledge of Plaintiffs termination) |
| 9. | Dr. Santapuri Rao | Plaintiff's treating Physician (has knowledge of Plaintiff's health condition; non-expert testimony) |
| 10. | Rajni Bhatt | Employee of Defendant (has knowledge of Plaintiff's employment history and job performance) |

B.  On damages Plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

None.

C.  Defendant objects to the following witnesses for the reasons stated:

Defendant objects to any testimony of Dr. Santapuri Rao as his knowledge of Plaintiff's health condition by its very nature is expert testimony.

## 7. DEFENDANT'S WITNESSES:

A.     On liability Defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1.     Oscar Ronquillo, Mr. Desyatnik's former supervisor, will testify about Mr. Desyatnik's employment, Mr. Desyatnik's acts of insubordination on July, 10, 2002, his decision to terminate Mr. Desyatnik for his acts of insubordination that day, and that he never made any anti-Semitic comments in the workplace or directed against Mr. Desyatnik and that his decision to terminate Mr. Desyatnik had nothing to do with the fact that Mr. Desyatnik was Jewish.

2.     Jake Kastermans will testify about Mr. Desyatnik's employment, that he was not Mr. Desyatnik's supervisor at the time Mr. Desyatnik was terminated, that he did not participate in the decision to terminate Mr. Desyatnik, and that he never made any anti-Semitic comments in the workplace or directed against Mr. Desyatnik.

3.     Daniel Lenino will testify that he was Mr. Desyatnik's supervisor for a period of time and that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

4.     James Binns, Atlantic's Chief Executive Officer, will testify that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

5.     Rajni Bhatt will testify that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

6.     Peter Morse, Controller, will testify that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik, and will testify that he never told Mr. Desyatnik words to the effect that the company would never fire him but would make his life miserable.

8

7. Mila Jalbuena will testify that she never told Mr. Desyatnik words to the effect that Oscar Ronquillo had been chosen as his boss to push him out of the company.

8. Alfred Dzikowski will testify that he never heard ay anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

9. Greg Rohrbacker, Atlantic's Vice President of Sales and Engineering, will testify that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik, and will testify that he never told Mr. Desyatnik words to the effect that times were changing and that his time was over and will testify as to conversations with Oscar Ronquillo regarding Mr. Desyatnik's termination.

10. Martin Leogrande will testify as to events that took place on the day of Mr. Desyatnik's termination and that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

11. Dale Webber will testify as to events that occurred on the day of Mr. Desyatnik's termination and that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

12. Ronald Grispart will testify as to events that occurred on the day of Mr. Desyatnik's termination and that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

13. Richard Cyrgaliss will testify as to events that occurred on the day of Mr. Desyatnik's termination and that he never heard any anti-Semitic remarks in the workplace or directed against Mr. Desyatnik.

14. Brian J. McGrady, President, will testify about company and human resource policies and procedures.

B.  On damages Defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1.  Defendants will offer deposition testimony of Dr. Rao that Mr. Desyatnik had been treating for depression with Dr. Rao prior to his termination, and that he did not see Dr. Rao until almost two months after the termination, and then only one additional visit and did not treat with Dr. Rao therafter.

C.  Plaintiff objects to the following witnesses for the reasons stated:

### 8. EXPERT WITNESSES:

Plaintiff will not employ an expert witness in connection with this trial.

### 9. PLAINTIFF'S DEPOSITIONS:

Plaintiff does not anticipate the introduction of deposition testimony, except in the event of unavailability of witness or for impeachment purposes.

### 10. DEFENDANT'S DEPOSITIONS:

A.  On liability Defendant intends to read into evidence the following:

N/A

B.  On damages Defendant intends to read into evidence the following:

N/A

C.  Plaintiff objects to the deposition testimony set forth above for the reasons stated:

N/A

### 11. PLAINTIFF'S EXHIBITS:

A.  Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list:

1.  Plaintiff's Right to Sue Letter dated August 21, 2002.
2.  Plaintiff's Charge of Discrimination dated November 11, 2002.

10

3. Plaintiff's EEOC Amended Affidavit dated December 14, 2002.

4. Plaintiff's EEOC Affidavit dated November 11, 2002.

5. Plaintiff's New Jersey Department of Labor, Division of Unemployment Insurance, Notice of Determination dated June 11, 2003.

6. Plaintiff's New Jersey Department of Labor, Division of Programs, Notice of Hearing by Telephone.

7. Plaintiff's New Jersey Department of Labor, Division of Programs, Decision of "The Appeal Tribunal" dated September 30, 2002.

8. Plaintiff's New Jersey Department of Labor, Division of Programs, Notice of Postponement dated September 20, 2002.

9. Plaintiff's New Jersey Department of Labor, Division of Programs, Notice of In-Person Hearing.

10. Plaintiff's New Jersey Department of Labor, Division of Programs, Notice of Receipt of Appeal dated October 18, 2002.

11. Plaintiff's Notice of Appeal dated October 10, 2002.

12. Plaintiff's New Jersey Department of Labor, Request for Refund of Unemployment Benefits, dated September 30, 2003.

13. New Jersey Department of Labor, Notice of Overpayment Information.

14. New Jersey Department of Labor, Schedule of Overpayments for Igor M. Desyatnik.

15. New Jersey Department of Labor, Unemployment Pay Stub dated Sept 27, 2002.

16. New Jersey Department of Labor, Unemployment Pay Stub.

17. Second New Jersey Department of Labor, Unemployment Pay Stub.

18. New Jersey Department of Labor, Unemployment Insurance Office, Appointment for Claims Examiner Interview dated August 12, 2002.

19. New Jersey Department of Labor, Unemployment Insurance Office, Appointment for Claims Examiner Interview dated August 12, 2002.

20. Defendant's Interrogatory Responses dated May 10, 2004.

21. Defendant's Rule 26 Disclosure Statement dated March 3, 2004.

22. Plaintiff's 2001 Income Tax Return.

23. Plaintiff's 2002 Income Tax Return.

24. Plaintiff's 2003 Income Tax Return.

25. Plaintiff's professional resume and job application (000100-000104)

26. Summons & Complaint dated November 17, 2003.

27. Job Description for Machinist / Tool Maintenance person (000204).

B. Defendant objects to the introduction of Plaintiff's exhibits:

1. Defendant objects to the following exhibits (identified by number) on the basis of not relevant pursuant to Fed. R. Evid. 402: #22-25, 27..

2. Defendant objects to the following exhibits on the basis that they are prejudicial pursuant to Fed. R. Evid. 403: #2-4, 22-26.

3. Defendant objects to the following exhibits on the basis that they are cumulative pursuant to Fed. R. Evid. 403: #2-4.

## 12. DEFENDANT'S EXHIBITS:

A. Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list:

Defendant's Exhibits

| 1. Desyatnik-2 (6/3/05) | Defendant's First Set of Interrogatories |
| 2. Desyatnik-3 (6/3/05) | Plaintiff's Response to Defendant's First Set of Interrogatories |
| 3. Desyatnik-4 (6/3/05) | Training record signed by Igor Desyatnik |
| 4. Desyatnik-5 (6/3/05) | Atlantic Work Rules and Regulations |
| 5. Desyatnik-6 (6/3/05) | Clifton Family Practice Associates Medical Records |

|  |  |
|---|---|
| (Bates 000105-10) |  |
| 6. Bates 242 | Statement dated July 10, 2002 |
| 7. Bates 112-114 | Attendance Records |
| 8. Bates 115-116 | Notice of Determination; Division of Unemployment Insurance (Date of Mailing 9/30/02) |
| 9. Bates 000125-134 | Employee Earnings Records |
| 10. Bates 135 | 9/24/02 Memo signed by Oscar Ronquillo |
| 11. Bates 136 | 9/24/02 Memo signed by Oscar Ronquillo |
| 12. Unmarked document provided by plaintiff in discovery | Decision of the Appeal Tribunal (Date at Dec Mailed 7/9/03) |
| 13. www.templebethel-main.org/observance/holidays.html | Jewish Holiday Calendar (2000-2003) |
| 14. Unmarked document provided by plaintiff in discovery | Charge of Discrimination dated 11/11/02 |
| 15. Unmarked document | AIG Workers' Compensation Closed Claim Notice |

B.  Plaintiff objects to the introduction of Defendant's exhibits:

1.  Plaintiff objects to the following exhibits (identified by number) on the basis of not relevant pursuant to Fed. R. Evid. 402: #7, 10-11.

### 13. PLAINTIFF'S LEGAL ISSUES:

Whether Plaintiff was unlawfully discriminated against by Defendant by virtue of his religion in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et seq. and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*

## 14. DEFENDANT'S LEGAL ISSUES:

### Alleged Workplace Harassment

1. Mr. Desyatnik was not subjected to a hostile work environment under Title VII or the NJLAD.; that is, he was not subject to conduct that occurred because he was Jewish, that a reasonable person of Jewish ancestry would consider sufficiently severe or pervasive so as to alter the conditions of employment and create an intimidating, hostile or offensive work environment. (Lehmann v. Toys 'R Us, Inc., 132 N.J. 587 (1993); Heitman v. Monmouth County, 321 N.J. Super. 133 (App. Div. 1999).)

2. The Lehmann workplace harassment analysis applies to workplace harassment claims under both Title VII and New Jersey's LAD.

3. Any comments found to be offensive by Mr. Desyatnik were merely offensive utterances or comments, offhand comments or isolated incidents which did not unreasonably interfere with Mr. Desyatnik's employment and, thus, did not rise to the level of workplace harassment.

4. Mr. Desyatnik's work environment was not hostile or abusive as any offensive comments were not significantly severe or pervasive to constitute an abusive or hostile workplace.

5. Any offensive comments were not directed at Mr. Desyatnik, did not involve any physical threat or humiliation and as such did not rise to a level that would create a discriminatory hostile work environment.

6. A hostile work environment claim cannot stand where comments are directed at other individuals, as plaintiff cannot show that the comments would not have been uttered but for his religion.

14

7. Comments referring to other individuals that were merely overheard by a worker should not be considered severe or pervasive enough to constitute a hostile work environment.

8. A plaintiff needs to show some sort of contemporaneous evidence that he actually considered the working environment to be discriminatory, hostile or abusive, such as a "complaint."

9. It is the rare or extreme case in which a single incident will be so severe that it would make the working environment hostile.

10. Discrete acts that fall within a Title VII statutory time period (here, 300 days) do not make timely acts that fall outside the time period.

Alleged Disparate Treatment

1. Plaintiff bears the burden of establishing a prima facie case of discriminating discharge by showing (i) that he is a member of a protected class; (ii) that he was qualified for the position; (iii) that he was discharged; and (iv) that other employees not in a protected class were treated more favorably.

2. Upon satisfying a prima facie case of discriminatory discharge, the burden shifts to Atlantic to show a legitimate nondiscriminatory reason for Mr. Desyatnik's discharge.

3. Upon a successful showing by Atlantic of a legitimate nondiscriminatory reason for Mr. Desyatnik's discharge, the burden shifts back to Mr. Desyatnik to show that such reason for discharge was a post hoc fabrication or was otherwise not the motivating basis of the termination.

4. In order for Mr. Desyatnik to show a discriminatory motivation on the part of Atlantic, Mr. Desyatnik must demonstrate such weaknesses, implausibilities, inconsistencies,

incoherencies or contradictions in Atlantic's proffered legitimate reasons for Mr. Desyatnik's termination.

5. Mr. Desyatnik must establish some causal nexus between his being Jewish and Atlantic's decision to terminate his employment.

6. Mr. Desyatnik must establish some temporal connection between purported remarks concerning Jews and his termination.

7. Offensive statements made by 'non-decision makers" cannot be used to show a discriminatory attitude.

8. Statements made by decision makers unrelated to the decisional process itself may not be used to satisfy a plaintiff's burden.

Damages

1. To warrant punitive damages, Atlantic's conduct must have been wantonly reckless or malicious; there must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wonton and willful disregard of the rights of another.

2. Plaintiff must show exceptional or outrageous action to recover punitive damages.

Limitations

1. Pursuant to Title VII, an individual has 300 days from the date of an unlawful employment practice to file a charge with the EEOC, absent a continuing violation, and all such acts that occurred more than 300 days prior to the EEOC filing are time-barred. Discrete acts that fall within the statutory time period do not make timely acts that fall outside the period.

### 15. MISCELLANEOUS:

## 16. JURY TRIALS:

Not later than: 10 days before trial:

 A. Each party shall submit to the District Judge and to opposing counsel, a Trial Brief of memorandum in accordance with General Rule 27, with citations to authorities cited and arguments in support of its position on all disputed issues of law. In the event a brief is not filed, the delinquent party's complaint or defense may be stricken.

 B. Counsel for each party shall submit to the Judge with a copy to opposing counsel, written requests for instructions to the jury. Supplemental requests for instructions may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same. In the case of multiple requests by party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

 C. If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

 D. Counsel shall submit to the Judge, with a copy to opposing counsel, their proposed voir dire, if any.

## 17. NON-JURY TRIALS:

Not later than: _____n/a_____

 A. Each party shall submit to the District Judge and to opposing counsel, a Trial Brief or memorandum in accordance with General Rule 27, with citations to authorities cited and arguments in support of its position on all disputed issues of law. In the event a brief is not filed, the delinquent party's complaint or defense may be stricken.

B. Each side shall submit to the Judge and other counsel proposed written findings of facts and conclusions of law. These is reserved to counsel the right to submit additional proposed findings of fact and conclusions of law during the course of the trial on those matters that cannot reasonably be anticipated.

C. If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

18. **TRIAL COUNSEL:** (List the names of trial counsel for all parties.)

For the Plaintiff: Saul D. Zabell, Esq. and Steven M. Kalebic, Esq.

For Defendant: Norman I. Klein, Esq. and/or Virginia T. Shea, Esq.

19. **BIFURCATION:** (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages issues will be tried.)

The issue of liability and damages SHALL / SHALL NOT be tried separately.

20. **ESTIMATED LENGTH OF TRIAL:**

___1___ days for liability and ___1___ days for damages.

AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY, FROM TIME TO TIME, SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

(EXHIBIT LIST FOLLOWS)

/s/ Saul D. Zabell, Esq.
Saul D. Zabell, Esq. (SZ 2738)
STEVEN M. KALEBIC (SK 9385)
*Attorney for Plaintiff*

/s/ Virginia T. Shea
*Norman I. Klein (NK 4768)*
*Virginia T. Shea, Esq. (VS 8848)*
*Attorney for Defendant*

MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE

DATED: 1/2/08