## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.    PRELIMINARY STATEMENT............................................................................... 2

II.   ARGUMENT.............................................................................................................. 2

    POINT ONE
    PLAINTIFF CAN ESTABLISHED THE EXISTENCE
    OF A HOSTILE WORK ENVIRONMENT PREDICATED
    UPON HIS RELIGION ............................................................................................. 2

        Intentional Discrimination Because of Religion....................................... 3

        The Discrimination was Pervasive and Regular ...................................... 4

        The Discrimination Detrimentally Effected Plaintiff............................... 5

        Reasonable Person Standard ..................................................................... 5

        Respondeat Superior .................................................................................. 6

    POINT TWO
    PLAINTIFF HAS SUFFICIENTLY PLEAD A
    DISPARATE TREATMENT CLAIM
    PREDICATED UPON HIS RELIGION.................................................................. 7

    POINT THREE
    A JURY IS ENTITLED TO CONSIDER WHETHER
    TO AWARD PUNITIVE DAMAGES AFTER THE
    PRESENTATION OF ALL OF THE EVIDENCE ............................................... 7

III.  CONCLUSION........................................................................................................... 9

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT

Harris v. Forklift Sys., Inc., 510 U.S. 17, L. Ed. 2d 295, 114 S. Ct. 367 (1993) .............................. 3

Meritor Sav. Bank v. Vinson, 477 U.S. 57, L. Ed. 2d 49, 106 S. Ct. 2399 (1986) ...................... 3, 6

## FEDERAL COURT CASES

### Court of Appeals

Andrews v. City of Phila., 895 F.2d 1469 (3d Cir. 1990) ............................................................ 2, 3

Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001) .......................................................................... 3

Katz v. Dole, 709 F.2d 251 (4th Cir. 1983) ..................................................................................... 6

Knabe v. Boury Corp., 114 F.3d 407 (3d Cir. 1997) ....................................................................... 6

Kunin v. Sears Roebuck & Co., 175 F.3d 289 (3d Cir. 1999) ......................................................... 2

Lopez v. S.B. Thomas, Inc., 831 F.2d 1184 (2d Cir. 1987) ............................................................. 3

Saxton v. AT&T Co., 10 F.3d 526 (7th Cir. 1993) .......................................................................... 6

### Federal District Court

Zastrow v. Ikegami Elecs. (U.S.A.), 1997 U.S. Dist. LEXIS 21002 (D.N.J. 1997) ........................ 4

## STATE COURT CASES

Lehmann v. Toys R Us, Inc., 132 N.J. 587, A.2d 445 (N.J. 1993) ............................................. 5, 7

## I. PRELIMINARY STATEMENT

Plaintiff, **IGOR DESYNATNIK**, submits this trial memorandum of law outlining the legal issues to be tried and in opposition to the pending motion filed by Defendant, **ATLANTIC CASTING AND ENGINEERING CORP.** (hereinafter "Atlantic" or "Defendant").

Plaintiff's Fifth and Sixth cases of action, disparate treatment claim and claim for punitive damages are supported by the record and are legally sufficient for a jury to find in Plaintiff's favor. Defendant's eleventh-hour attempt to side-step trial is unavailing, as it appears its trial memorandum of law represents the latest in a long and unfortunate series of attempts to re-litigate its failed motion for summary judgment.

## II. ARGUMENT

### POINT ONE

**PLAINTIFF CAN ESTABLISH THE EXISTENCE OF A HOSTILE WORK ENVIRONMENT PREDICATED UPON HIS RELIGION**

As previously set forth, to establish a *prima facie* case for a religiously hostile work environment under Title VII, a plaintiff must demonstrate five elements: "(1) the employee suffered intentional discrimination because of [religion]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [religion] in that position; and (5) the existence of respondeat superior liability." Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (citing Andrews v. City of Phila., 895

F.2d 1469, 1482 (3d Cir. 1990); Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001).1 With respect to the second element, the Third Circuit has held that "harassment is pervasive when incidents of harassment occur in concert or with regularity." Id. at 1484 (quoting Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987)). The Supreme Court has emphasized that the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) (quotation omitted). Whether an environment is hostile and therefore actionable can be determined only by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993).

**Intentional Discrimination Because of Religion**

In the present case, Mr. Kastermans referred to Plaintiff as a "Jewish bastard." (Pl. Dep. 87); told Plaintiff not to "show him Plaintiff's Jewish identity" approximately 2-3 times. (Pl. dep. 51, ln 1-3); told Plaintiff he, "knows who Plaintiff is and where he comes from." (Pl. Aff. ¶ 17)(Pl. Dep. 53, ln 20-22; 78, ln 25; 79, ln 5) and lastly, told Plaintiff that "Jews and Blacks are killing this Country." (Pl. Dep. 80, ln 12-13).

---

1 Under the NJLAD, a plaintiff states a claim for a religiously hostile work environment by showing that the "complained-of conduct (1) would not have occurred but for the employee's religion; and it was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment were altered and the working environment was hostile or abusive." Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 114 (3d Cir. 1999), cert. denied, 528 U.S. 1074, 145 L. Ed. 2d 663, 120 S. Ct. 786 (2000) (quoting Lehmann v. Toys R Us, Inc., 132 N.J. 587, 626 A.2d 445, 453 (N.J. 1993)).

Furthermore, with the exception of the anti-Semitic comment which occurred at Defendant's 2000 Christmas party, the remaining comments occurred on the heels of Plaintiff's transfer to the direct supervision of Mr. Ronquillo. Upon which transfer, Plaintiff encountered difficulty in the workplace, and was ultimately terminated after objecting to an order to sweep Defendant's machine shop.

In light of the foregoing, there can be no reasonable argument advanced by Defendant that Plaintiff was not subjected to intentional discrimination based upon his religion.

**The Discrimination was Pervasive and Regular**

As set forth above, the conduct of Defendant was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment. Specifically, Plaintiff was subjected to offensive, discriminatory comments on multiple occasions during the last year of his employment with Defendant.

From a severity standpoint, Plaintiff was referred to as a "Jewish bastard" by Defendant's president and was similarly warned not to show his "Jewish Identity". From a frequency standpoint, Plaintiff was subjected to no fewer that eight (8) discriminatory comments and the hands of Defendant during the last year of his employment.

Inasmuch as Courts in this Circuit have held that two lone incidents of attempted touching over a five year period satisfy the "severe and pervasive" component of a *prima facie* analysis, it would stand to reason that as a result of the aforementioned behavior on the part of Defendant, Plaintiff can meet this requirement. See Zastrow v. Ikegami Elecs. (U.S.A.), 1997 U.S. Dist. LEXIS 21002 (D.N.J. 1997).

**The Discrimination Detrimentally Effected Plaintiff**

Aside from the fact Plaintiff was terminated in July 2002, Plaintiff incurred psychological injures as a result of Defendant's conduct. Plaintiff testified, and Dr. Rao confirmed, that Plaintiff suffered from an exacerbation of his depression as a result of Defendant's actions herein. Specifically, Plaintiff suffers from depression. (Rao Dep. 13, ln 14-15). While Plaintiff was diagnosed with this ailment prior to commencing his employment with Defendant, the events which transpired herein caused Plaintiff to suffer from an exacerbation of his previous symptoms. (Rao Dep. 23-24, 27-28).

In September 2002, Plaintiff advised Dr. Rao that he lost his job and was struggling with his depression. (Rao Dep. 24, ln 5-8). Furthermore, Plaintiff testified that he sought treatment from Dr. Rao because of the circumstances surrounding his former employment with Defendant. (Pl. Dep. 139, ln 2-12). Plaintiff sought treatment after the termination of his employment because it took Plaintiff a while to realize that he required psychological assistance. (Pl. Dep. 19-21). Plaintiff's treatment with Dr. Rao was not limited to his termination. (Pl. Dep. 140, ln 5-6).

Based upon the foregoing, it is clear that Defendant's discrimination had a detrimental effect upon Plaintiff. As such, Plaintiff satisfies this element of a hostile work claim predicated upon his religion.

**Reasonable Person Standard**

Pursuant to the reasonable person standard as set forth in <u>Lehmann v. Toys R Us, Inc.</u>, 132 N.J. 587, 626 A.2d 445, 453 (N.J. 1993), a reasonable person who practiced the same religion as Plaintiff would certainly be harmed and offended by Defendant's conduct as alleged herein; to wit, being referred to as a "Jewish bastard," etc. Therefore,

there can be no argument that a reasonable, similarly situated person would not be affected by Defendant's conduct.

**Respondeat Superior**

Employers are not strictly liable for hostile work environments created by their employees. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 72, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) (quotation omitted). Rather, in the context of a hostile work environment claim under Title VII, employers are liable for their employees' harassment only if a plaintiff can prove that management-level employees had actual or constructive knowledge of the existence of the hostile environment and failed to take prompt and adequate remedial action. Katz v. Dole, 709 F.2d 251, 255 (4th Cir. 1983). Adequate remedial action is action "reasonably calculated to prevent further harassment." Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3d Cir. 1997) (quoting Saxton v. AT&T Co., 10 F.3d 526, 535 (7th Cir. 1993)).

In the present case and as set forth in Point One above, Defendant's president, Mr. Kastermans, had more than "actual or constrictive knowledge" of the existence of a hostile work environment, he himself made a series of anti-Semitic comments to Plaintiff. Simply put, Mr. Kastermans intentionally perpetrated a hostile work environment predicated upon Plaintiff's religious beliefs. As such, in light of Mr. Kastermans egregious behavior, Plaintiff clearly satisfies the fifth element of a hostile work environment claim.

## POINT TWO

### PLAINTIFF HAS SUFFICIENTLY PLEAD A DISPARATE TREATMENT CLAIM PREDICATED UPON HIS RELIGION

As previously set forth in this case, Mr. Kastermans referred to Plaintiff as his being a "Jewish bastard." (Pl. Dep. 87); told Plaintiff not to "show him Plaintiff's Jewish identity" approximately 2-3 times. (Pl. dep. 51, ln 1-3); told Plaintiff he, "knows who Plaintiff is and where he comes from." (Pl. Aff. ¶ 17)(Pl. Dep. 53, ln 20-22; 78, ln 25; 79, ln 5) and lastly, told Plaintiff that "Jews and Blacks are killing this Country." (Pl. Dep. 80, ln 12-13). While defendant cannot rebut the aforementioned set of undisputed facts, it attempts to invalidate Plaintiff's claims by asserting that Plaintiff's supervisor did not participate in such conduct. However, this argument is belied by the record. Mr. Ronquillo made an anti-Semitic comment to Plaintiff after he was reassigned as Plaintiff's Supervisor. (Pl. Dep. 90, ln 8-11). Inasmuch as a clear nexus exists between the discriminatory comments of **both** Mr. Kastermans and Mr. Ronquillo and the adverse employment action experienced by Plaintiff, Plaintiff can and has established a case of disparate treatment based upon his religion.

## POINT THREE

### A JURY IS ENTITLED TO CONSIDER WHETHER TO AWARD PUNITIVE DAMAGES AFTER THE PRESENTATION OF ALL OF THE EVIDENCE

Pursuant to the standard established in <u>Lehman v. Toys R Us, Inc.</u>, 132 N.J. 587 624-625, 626 A.2d 445, 464-65 (1993), punitive damages may be awarded only if the conduct of managerial or supervisory employees is particularly egregious and involves

the willful indifference or actual participation. Here, the factual record squarely comports with the Lehman standard. Specifically, and as set forth above, Defendant's principal, Mr. Kastermans referred to Plaintiff as his being a "Jewish bastard." (Pl. Dep. 87); told Plaintiff not to "show him Plaintiff's Jewish identity" approximately 2-3 times. (Pl. dep. 51, ln 1-3); told Plaintiff he, "knows who Plaintiff is and where he comes from." (Pl. Aff. ¶ 17)(Pl. Dep. 53, ln 20-22; 78, ln 25; 79, ln 5) and lastly, told Plaintiff that "Jews and Blacks are killing this Country." (Pl. Dep. 80, ln 12-13). In addition to this deplorable conduct, the anti-Semitic sentiments of Mr. Kastermans were echoed by Plaintiff's immediate supervisor, Mr. Ronquillo who made an anti-Semitic comment to Plaintiff after he was reassigned as Plaintiff's Supervisor. (Pl. Dep. 90, ln 8-11). Inasmuch as both Defendant's principal and Plaintiff's immediate supervisor made express anti-Semitic statements to Plaintiff, there can be no argument that Plaintiff has not satisfied the applicable legal standard and therefore, the issue of punitive damages must be presented to the jury for consideration.

## III. CONCLUSION

For all of the foregoing reasons, Defendant's trial brief should be disregarded and Plaintiff's fifth and sixth causes of action, as well as Plaintiff's claim for punitive damages should be presented to the jury.

Dated: Bohemia, New York
       October 17, 2008

                                      ZABELL & ASSOCIATES, PC

                                      By: _____
                                      Saul D. Zabell (*pro hac vice*)
                                      4875 Sunrise Highway, Suite 300
                                      Bohemia, NY 11716
                                      (631) 589-7242
                                      (631) 563-7475
                                      szabell@laborlawsny.com