<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IGOR DESYATNIK,

                Plaintiff,

v.

ATLANTIC CASTING &
ENGINEERING CORP.

                Defendant.

Civ. No.  03-5441 (DRD)

**O P I N I O N**

*Appearances by:*

Saul D. Zabell, Esq.
ZABELL & ASSOCIATES, PC
700 Lakeland Avenue
Bohemia, NY 11716

*Attorney for Plaintiff*

Virginia T. Shea, Esq.
CARLET, GARRISON KLEIN & ZARETSKY
1135 Clifton Avenue
PO box 2666
Clifton, NJ 07105-2666

*Attorney for Defendant*

**DEBEVOISE, Senior District Judge**


_____Defendant, Atlantic Casting & Engineering Corp., filed two motions in limine to dismiss Plaintiff's hostile work environment claims and one motion in limine to exclude the testimony of Plaintiff's psychiatrist.  For the reasons stated below, Defendant's motions will be denied.

## I.  Procedural History

Plaintiff, Igor Desyatik, was terminated by his employer, Defendant, Atlantic Casting & Engineering Corp., on July 9, 2002.  Plaintiff filed an eight count complaint against the Defendant alleging the following: (1) disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"); (2) disability discrimination in violation of  the New Jersey Law Against Discrimination ("NJLAD"); (3) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (4) national origin discrimination in violation of the NJLAD; (5) religious discrimination in violation of Title VII; (6) religious discrimination in violation of the NJLAD; (7) retaliation in violation of Title VII; (8) retaliation in violation of the NJLAD.  The Defendant then moved for summary judgment on all counts.  The court awarded summary judgment to the Defendant on six of the eight counts, finding that their was sufficient evidence to warrant a trial only on counts six and seven for religious discrimination in violation of the NJLAD and Title VII, respectively.  The two counts alleged I) creation of a hostile work environment and ii) termination of employment for discriminatory reasons.  The Defendant now moves in limine 1) to dismiss the Plaintiff's hostile work environment claim under Title VII because it is untimely, 2) to bar the Plaintiff's psychiatrist from testifying at the

1

trial on the grounds that his testimony is irrelevant, and 3) to dismiss the Plaintiff's hostile work environment claim under both Title VII and the NJLAD because the Plaintiff has failed to offer medical expert testimony to establish a causal link between Defendant's alleged acts and Plaintiff's emotional damages.

## II. <u>Factual Background</u>

Plaintiff, a Jewish man, began working as a tool maker in Defendant's machine shop on April 3, 2000.  Plaintiff initially worked under the supervision of Dan Lenino, Defendant's Quality Assurance Manager.  However, in September of 2001, Jake Kastermans, the President of Defendant company, placed the Plaintiff under the supervision of Oscar Ronquillo, Defendant's Machine Shop Manager.  It was from this point on that the Plaintiff alleges he was subjected to pervasive and regular religious discrimination by both Mr. Kastermans and Mr. Ronquillo.

According to Plaintiff, the religious discrimination allegedly occurred in the following manner.  In October of 2001, Mr. Ronquillo asked Plaintiff, "[a]re you Jewish?  Jake [Kastermans] told me."  In November of 2001, Mr. Kastermans told Plaintiff, "Don't show your Jewish identity in your work."  In that same month Plaintiff was accused of losing a tool and denied any involvement.  Thereafter, Mr. Kastermans told Defendant's co-owner, "I don't believe this Jewish bastard."  In December of 2001, Mr. Ronquillo referred to Plaintiff in a discussion with another employee by saying "[h]e's Jewish, and they are no good."  On several occasions, Plaintiff complained to Mr. Kastermans about the way Mr. Ronquillo treated him but was told, "[i]f you don't like this, take a hike . . . I know who you are, and I know where you come from."  At the beginning of 2002, Plaintiff was given fewer opportunities to work

2

overtime.  Sometime thereafter, Plaintiff was informed by Peter Morse, Defendant's Controller, that upper management was going to use every means possible to force Plaintiff to quit.  On July 10, 2002, Plaintiff reported to work to find another employee occupying his workstation.  He was told that his own project had been outsourced and that he should sweep the floor.  At that point, Defendant claims, and Plaintiff denies, an altercation ensued.  Plaintiff was then terminated.

Plaintiff has a history of depression.  In 1998 he was treated by a psychiatrist, Dr. Santapuri Rao, for mild depression.  Plaintiff saw Dr. Rao eleven times in 1998 and 1999, prior to his employment at Atlantic.  Plaintiff claims that at the time he started work at Atlantic, he was not suffering from any symptoms of depression, nor was he taking medication for his condition.  However, he alleges that during  his employment at Defendant's company, and as a result of the hostile work environment, his mental health deteriorated and he suffered from nightmares and depression.  During his employment with Atlantic, Plaintiff only saw Dr. Rao on one occasion, August 11, 2001, when he was given a prescription for an anti-depressant. Plaintiff did not see Dr. Rao again until September 7, 2002, two months after he was terminated, at which point Dr. Rao concluded that Plaintiff's depression had worsened and placed him on an additional anti-depressant that also acted as a sedative to enable sleep.  Plaintiff has now listed Dr. Rao as a fact witness in his trial against Defendant.

### III.  Motions to Dismiss Claims Will Be Converted to Motions for Summary Judgment

Defendant has filed two motions in limine requesting the Plaintiff's claims be dismissed based on the evidence presented.  As such, these two motions may be more accurately characterized as  motions for summary judgment.  Summary judgment is proper where "there is

no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate.

### IV.  Motion for Summary Judgment on Title VII Hostile Environment Claim

Defendant first motion for summary judgment alleges that Plaintiff's Hostile Work Environment claim under Title VII is time barred. Under 42 USCS § 2000e-5(e)(1), a Plaintiff who has filed a claim with a state agency must submit a federal claim to the Equal Employment Opportunity Commission ("EEOC") no later than 300 days "after the alleged unlawful employment practice occurred." Plaintiff filed his claim with the EEOC on November 11, 2002, and thus in order to meet the time requirements under the statute, he must be able to point to discriminatory conduct that occurred on or after January 14, 2002. Defendant argues that Plaintiff cannot meet this statutory requirement because the anti-Semitic comments allegedly

4

made by Mr. Kastermans and Mr. Ronquillo ceased in December of 2001.  Defendant further argues that Plaintiff's termination cannot be used to extend the time limitation because it does not constitute a part of a hostile work environment claim but instead serves as the basis for an independent action for wrongful termination.  Despite being correct with regards to the wrongful termination, Defendant's argument fails because the Plaintiff has alleged sufficient discriminatory conduct after January 14, 2002 to maintain his hostile work environment claim under Title VII.

The United States Supreme Court clarified the filing requirements under Title VII in its 2002 ruling in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105, explaining that the statute of limitations for a hostile work environment claims under Title VII differs substantially from claims for discrete discriminatory actions.  Id.  at 115.  In that case, a black male plaintiff named Abner J. Morgan Jr. filed a claim with the EEOC against his employer, Amtrak,  alleging that he was "consistently harassed and disciplined more harshly than other employees on account of his race."  Id. At 105.  Mr. Morgan alleged a series of discriminatory acts, including the company's refusal to allow him to participate in an apprentice program, "numerous 'written counselings' for absenteeism, as well as the use of racial epithets against him by his managers."  Id. at 106.  Many of these acts took place more than 300 days before Mr. Morgan filed his claim with the EEOC, and Amtrak subsequently brought a motion for summary judgment alleging that these acts could not be considered by the court because they fell outside of the statute of limitations.  Id.  The District Court agreed with Amtrak, citing a 7th circuit case to establish that a plaintiff could not base a suit "on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that

conduct", and noting that in this case Morgan was clearly aware of the discrimination as it

occurred and thus could reasonably be expected to have brought his claim within the statute.  Id.

(quoting Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1167 (1996)).

      The Court of Appeals for the Ninth Circuit ultimately reversed the decision, holding that

a Plaintiff can recover for conduct outside the statute of limitations under the continuing

violation doctrine where he shows either 1) "a series of related acts one or more of which are

within the limitations period," or 2) "a systematic policy or practice of discrimination that

operated, in part, within the limitations period -- a systemic violation." 232 F.3d 1008, 1014,

1015-1016 (2000).  Under this doctrine, the court found that the acts occurring prior to the

limitation period were "sufficiently related to the conduct within the limitations period" to allow

Morgan to submit them to a jury for the purposes of determining Amtrak's liability. Id. at 1017.

      The Supreme Court affirmed the decision in part and reversed it in part, finding that the

Court of Appeals failed to recognize an important distinction implicit in the language of  42

USCS § 2000e-5(e)(1), which states that a charge must be filed "within three hundred days after

the alleged unlawful employment practice occurred."  The Court concluded that the occurrence

of an unlawful employment practice could either refer to discrete instances of discriminatory

conduct "such as termination, failure to promote, denial of transfer, [or]  refusal to hire," or the

kind of repeated discriminatory conduct that constitutes a claim for a hostile work environment.

Morgan, 536 U.S. at 114.  More importantly, the court held that this distinction would have a

significant impact on the statute of limitations, noting that "discrete discriminatory acts are not

actionable if time barred, even when they are related to acts alleged in timely filed charges"

because "[e]ach incident of discrimination and each retaliatory adverse employment decision

constitutes a separate actionable 'unlawful employment practice.'" <u>Id.</u> at 113.  The Court noted

that this differs dramatically from the treatment of hostile work environment cases, observing

that such claim revolve around a continuous unlawful practice of repeated conduct that "cannot

be said to occur on any particular day" and noting that, in contrast to discrete acts, individual

instances of conduct in a hostile work environment claim may not be actionable on their own.  <u>Id.</u>

at 115.  The Court further clarified its reasoning, explaining that:

> It is precisely because the entire hostile work environment
> encompasses a single unlawful employment practice that we do not
> hold, as have some of the Circuits, that the plaintiff may not base a
> suit on individual acts that occurred outside the statute of
> limitations unless it would have been unreasonable to expect the
> plaintiff to sue before the statute ran  on such conduct. The statute
> does not separate individual acts that are part of the hostile
> environment claim from the whole for the purposes of timely filing
> and liability. [...]  In order for the charge to be timely, the employee
> need only file a charge within 180 or 300 days of any act that is
> part of the hostile work environment.

<u>Id.</u> at 117-118.

The court remanded the case, instructing the lower court to allow Morgan to bring claims

for any otherwise time barred discriminatory acts that were related to Amtrak's alleged hostile

work environment practices while disallowing claims for discrete discriminatory acts.  <u>Id.</u> at 121.

In this case, this court has already established that Desyatnik presented sufficient

evidence to bring a hostile work environment claim based on alleged discriminatory conduct

occurring prior to January 14, 2002, and thus prior to the limitation period.  <u>Desyatnik v. Atlantic</u>

<u>Casting & Engineering Corp.</u>, 2005 WL 3216533, *6 (D.N.J., 2005).  Consequently, in order for

the Plaintiff's claim to survive he must allege a continuation of that alleged pattern of

discriminatory conduct after January 14, 2002.  As the Defendant argues, and as the Court in

<u>Morgan</u> explicitly states, a Plaintiff's wrongful termination constitutes a discrete, actionable

discriminatory incident act and thus does not satisfy these criteria.  Id. at 115; see also Zankel v. Temple University, 245 Fed.Appx. 196, 199 (3d Cir. 2007) (Finding plaintiff's termination was a discrete act and  not "a continuation of any earlier failures to accommodate" her disability under the ADA).

However, the Plaintiff does allege additional conduct that a reasonable trier of fact could find was related to the alleged anti-Semitism at the Defendant's machine shop.  To begin with, the Plaintiff claims that he was frequently denied overtime  beginning in January of 2002. Sometime thereafter, Plaintiff was informed by Peter Morse, Defendant's Controller, that upper management was going to use every means possible to force Plaintiff to quit.  On July 10, 2002, Plaintiff reported to work to find another employee occupying his workstation.  He was told that his own project had been outsourced and that he should sweep the floor, custodial work that the Plaintiff argues was degrading and not commensurate with his position as a tool maker.

While these individual instances of conduct would not likely be actionable on their own, a reasonable trier of fact could deem them sufficiently related to the Defendant's earlier alleged anti-Semitic comments to constitute a continuous unlawful employment practice.  Indeed, the denial of overtime, outsourcing of his project, and instructions to sweep the floor all came from the same management staff accused of making highly offensive statements about the Plaintiff's Jewish faith.  Taken in conjunction with the Controller's statement that upper management was committed to forcing the Plaintiff out of his job, a reasonable trier of fact could conclude that the Defendant was engaged in a continuous, unlawful, and discriminatory employment practice that stretched from the first alleged anti-Semitic comments in October of 2001 to the floor sweeping incident  in July of 2002.  Thus, because the Defendant's conduct could be deemed one

continuous "unlawful employment practice" for the purposes of 42 USCS § 2000e-5(e)(1), and

because some of the acts contained within that practice occurred after January 14, 2002, within

the 300 day filing limitation period, the Plaintiff's claim for a hostile work environment is not

untimely and the Defendant's motion for summary judgment will be denied.

### V.  Motion for Summary Judgment on Both NJLAD and Title VII Claims

The Defendant additionally moves for summary judgment on the hostile work

environment claim on the grounds that Plaintiff cannot establish his NJLAD and Title VII Claims

without presenting expert testimony to establish emotional damages.  With respect to Plaintiff's

NJLAD claim, this is incorrect.  The New Jersey Supreme Court has explicitly held  that a

plaintiff in an NJLAD discrimination case can establish emotional damages without expert

testimony.  Rendine v. Pantzer, 141 N.J. 292, 312 (N.J. 1995).  In Rendine, two woman brought

suit against their employer under NJLAD claiming that they were wrongfully terminated for

becoming pregnant.  Included in their suit was a claim for emotional damages, which the jury

awarded them in the approximate amount of $105,000 and $125,000.  Id. at 311.  The only

evidence offered by the Plaintiffs during the trial was their own testimony, and the defendant

moved to have the verdict overturned because the emotional damages were not supported by

expert testimony.  Id. at 312.  The New Jersey Supreme Court affirmed the emotional damages

verdict, noting that the 1990 amendment to the LAD authorized recovery of emotional distress

damages and observing that the accompanying Committee Statement "emphasized that the LAD

is to be liberally construed so that all common law remedies are available to persons protected by

the LAD."  Id.   Furthermore, the Court agreed with the Appellate  court's determination that

"both plaintiffs described in detail their inconvenience and economic loss, physical and emotional stress, anxiety in searching for reemployment, uncertainty, career and family disruption and other adjustment  problems [and that their] problems seem precisely the type for which the Legislature intended compensation." Id. (citing Rendine v. Pantzer, 276 N.J.Super. 398 at 440-41).  Thus, Desyatnik may provide his own testimony and need not present any expert testimony in order to establish emotional damages for the purpose of his NJLAD claim.

With regard to the Plaintiff's Federal action, the Court of Appeals for the Third Circuit has never explicitly stated whether expert medical testimony is required to establish emotional damages in a Title VII claim.  However, the Court of Appeals has explicitly ruled on this issue with regard to 42 U.S.C.S. § 1983 civil rights violations.  In Bolden v. Southeastern Pa. Transp. Auth., 21 F.3d 29 (3d Cir. 1994), a former employee brought a 42 U.S.C.S. § 1983 claim against his employer for emotional damages and damages to his reputation resulting from an unconstitutional drug-testing program.  A jury returned a verdict of $250,001, including emotional damages, and the defendant appealed, arguing in part that expert medical testimony was necessary to establish emotional damages.  Id. at 33.  The court affirmed the judgment, explicitly rejecting this argument and explaining that civil rights laws are intended to provide broad compensation for violations of civil rights.  Noting a trend away from requiring expert medical testimony, the court observed:

> [W]e are persuaded that the approach taken by our sister circuits
> which have dispensed with a requirement of expert testimony to
> corroborate a claim for emotional distress is more consistent with
> the broad remunerative purpose of the civil rights laws[...]  In light
> of the purpose of the civil rights laws [...], we see no reason to
> require that a specific type of evidence be introduced to
> demonstrate injury in the form of emotional distress. [...] We are

10

> confident that courts and juries can ensure that plaintiffs recover
> only for actual injury even in the absence of expert medical
> testimony in such cases.

Id. at 34-6.

The Court's reasoning is highly persuasive with regard to Title VII which, like NJLAD and 42 U.S.C.S. § 1983, is intended to provide broad protections for civil rights.  Furthermore, the EEOC's "Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991", sheds great light on the Commission's own treatment of emotional damages, noting that while"medical evidence of emotional harm" may be required during conciliation negotiations, "evidence of emotional harm may be established by testimony" alone.  EQUAL EMPLOYMENT OPPORTUNITY COMMISSION  1992 WL 189089, 5-6 (citations omitted)   In fact, the EEOC sights an 8th Circuit case,  Williams v. TransWorld Airline, Inc., for the proposition that the "'[p]laintiff's own testimony may be solely sufficient to establish humiliation or mental distress.'" Id. (quoting Williams v. TransWorld Airlines, Inc., 660 F.2d 1267, 1273, 27 EPD ¶ 32,174 (8th Cir.1981)).  Thus, by the EEOC's own guidelines, it would be unreasonable to require a Plaintiff in this case to provide expert testimony to establish emotional damages for his Title VII claim.  Consequently, Defendant's motion for summary judgment will be denied.

## VI. Defendant's In Limine Motion to Exclude Testimony

Finally, Defendant argues that the testimony of Plaintiff's psychiatrist, Dr. Santapuri Rao, should be excluded because it is irrelevant.  Federal Rule of Evidence 401 states that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

11

be without the evidence." <u>Fed.R.Evid. 401</u>. All relevant evidence is generally admissible in court unless a statute or rule proscribes such admission. <u>See</u> <u>Fed.R.Evid. 402</u>. A trial court judge has broad discretion to determine the relevance of proffered evidence. <u>Hamling v. United States</u>, 418 U.S. 87, 124-25 (1974).

Defendant has not pointed to any particular rule that bars entry of Dr. Rao's testimony, but merely points out that, as a fact witness, Dr. Rao cannot offer any opinion evidence as to the cause of Plaintiff's emotional distress.  Defendant further argues that because the Plaintiff has offered no expert evidence to establish causation between the Defendant's alleged actions and any emotional distress observed by Dr. Rao, Dr. Rao's observations are completely irrelevant. For the reasons already stated, this assertion is clearly erroneous.  The Plaintiff himself can testify to the causal link between the Defendant's actions and any emotional distress observed by Dr. Rao.   As the Defendant acknowledges, the Court of Appeals for the Third Circuit has recognized that a Doctor may be called as a fact witness merely to testify about his diagnosis or treatment of a patient.  <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 159 n.8 (3d Cir. 1999).  Dr. Rao may testify with regard to his treatment of the Plaintiff for depression and, while he may not offer opinion evidence as to its cause, he can still validate the Plaintiff's claim that he began to suffer from emotional problems while working at the Defendant's company and that these problems increased throughout his tenure at the company and immediately following his termination.   In fact, establishing the sequence of events may be one of the primary goals of  Dr. Rao's testimony.  The EEOC makes it clear in its own discussion of emotional damages that "[t]he claim of emotional harm will be seriously undermined if the onset of symptoms of emotional harm preceded the discrimination."  EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION  1992 WL 189089, 5.  Fact testimony by Dr. Rao that the Plaintiff's depression worsened during his exposure to the allegedly hostile work environment at the Defendant's shop is highly relevant to his claim.  Thus, Defendant's motion to exclude Dr. Rao's testimony will be denied.

## VIII. <u>Conclusion</u>

For the reasons set forth above, Defendant's motions will be denied.  The court will enter an order implementing this opinion.

/s/ **Dickinson R. Debevoise**
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated:**        **October 23, 2008**

13